

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Emerson Electric Co., et al., | ) | CASE NO. 1:00 CV 350 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Spartan Tool, LLC, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the Court upon Plaintiffs' Motion for Claim Construction and for Partial Summary Judgment of Infringement of Claims 73 and 78 of the 'XXX Patent (Doc. 145) and Spartan's Motion to Dismiss the Third Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 136). This case arises out of the manufacture and sale by defendant Spartan Tool, LLC of machines which allegedly infringe four patents owned by and licensed to plaintiffs. On May 3, 2002, this Court issued an opinion resolving a number of issues involving three of the patents. Subsequently, the U.S. Patent and Trademark Office issued a

1

fourth patent to plaintiff Emerson Electric Co. The motions currently before this Court involve only this fourth patent. For the following reasons, plaintiffs' Motion is GRANTED and defendant's Motion is DENIED.

## FACTS

The majority of the relevant facts are set forth in this Court's May 3, 2002 Memorandum of Opinion and Order, which is incorporated herein by reference.

On July 2, 2002, U.S. Patent No. 6,412,136 entitled "Drain Cleaning Apparatus" (hereafter "'136 Patent") was issued. ('136 Patent).

Based on the representations of the parties, this Court can only assume that defendant intends to continue making, using, offering to sell and/or selling the Modified Model 502 Cable Machine. It was anticipated by counsel and the parties that a ruling on dispositive motions relating to the '136 Patent would be forthcoming immediately after its issuance.

## MOTION TO DISMISS

By agreement of the parties and in accordance with this Court's Order, plaintiffs filed a Third Amended Complaint on April 17, 2002, adding claims of infringement of the '136 Patent against defendant. Plaintiffs moved for partial summary judgment as to those claims on June 3, 2002. Although the '136 Patent had not yet issued at the time the Third Amended Complaint and plaintiffs' Motion were filed, the parties and this Court anticipated its prompt issuance. Based on the parties' representations and in order to expedite trial of this matter, the documents were accepted for filing with the understanding that they would be read to reference the '136 Patent as soon as it was issued. The '136 Patent has, in fact, issued and plaintiffs' claims are now ripe for adjudication. For this reason, Spartan's Motion to Dismiss

2

the Third Amended Complaint for Lack of Subject Matter Jurisdiction is denied as moot. This Court finds that it has subject matter jurisdiction over the claims asserted in the Third Amended Complaint.[1]

## MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported

---

[1] Similarly, defendant's arguments in opposition to summary judgment dependent on the fact that the '136 Patent had not yet issued are also moot and will not be addressed by this Court.

3

> as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

### B. Discussion

Plaintiffs move for construction of Claims 30 and 35 of the '136 Patent (previously application claims 73 and 78) and for summary judgment as to the literal infringement of those claims by the Modified Model 502 Cable Machine.

Defendant argues that the Modified Model 502 Cable Machine does not infringe Claims 30 and 35 of the '136 Patent, as those claims are properly construed. Defendant also argues that plaintiffs are not entitled to partial summary judgment because Claims 30 and 35 of the '136 Patent are invalid as anticipated and obvious.

#### 1. Infringement

"Patent infringement occurs when a device (or composition or method), that is literally covered by the claims or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent." *Multiform*

4

AO 72A
(Rev.8/82)

*Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476 (Fed. Cir. 1998). *See also* 35 U.S.C. § 271. A determination of infringement or non-infringement requires a two-step analysis:

> First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as to whether the properly construed claims read on the accused device. The first step of this analysis–claim construction–is a question of law. Accordingly, it falls upon the district court to discern the meaning of the claim language. . . .The second step of this analysis–the determination of whether the properly construed claims read on the accused device–is a question of fact. Thus, summary judgment. . .can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims.

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citations omitted). *See also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341 (Fed. Cir. 2001); *Intermatic Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1363 (Fed. Cir. 2001).

Thus, in order to determine whether defendant's Modified Model 502 Cable Machine infringes the '136 Patent, this Court must construe the claims at issue and, in the absence of a genuine issue of material fact, determine whether those claims read on the Modified Model 502 Cable Machine. *See WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1346 (Fed. Cir. 1999).

### a. Claim Construction

Claim interpretation, commonly referred to as claim construction, "is the process of giving proper meaning to the claim language." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Claim construction must begin with an examination of the language of

5

the claims. *Rexnord*, 274 F.3d at 1341. *See also Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316, 1327 (Fed. Cir. 2001). The general rule is that "all terms in a patent claim are to be given their plain, ordinary and accustomed meaning to one of ordinary skill in the relevant art." *Rexnord*, 274 F.3d at 1342. However, if the claim language is unclear, "a court must look to the specification and file history to define the ambiguous term." *Id.* at 1343. "When the meaning of a term used in a claim is sufficiently clear from its definition in the patent specification, that meaning shall apply." *Intermatic*, 273 F.3d at 1365. The specification must be considered as a whole, and all portions of the written description must be read, "if possible, in a manner that renders the patent internally consistent." *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-1380 (Fed. Cir. 2001).

Although the claims are informed by the specifications, "it is the claims that measure the invention." *Rexnord*, 274 F.3d at 1344. As the Federal Circuit has repeatedly noted, "Specifications teach. Claims claim." *Id.* (quoting *SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985)). Finally, the prosecution history should be examined, if in evidence, "since statements made during the prosecution of a patent may affect the scope of the invention." *Rexnord*, 274 F.3d at 1343. "[I]f the meaning of the claim limitation is apparent from the intrinsic evidence alone, it is improper to rely on extrinsic evidence other than that used to ascertain the ordinary meaning of the claim limitation." *Bell Atlantic Network Serv., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001).

Claim 30 of the '136 Patent claims,

A drain cleaning apparatus, comprising:

6

> a cable drum assembly;
> a motor coupled to the drum assembly for rotating the drum assembly about an axis;
> a cable guide tube having one end mounted on the apparatus, the guide tube being flexible between its ends such that an operator can direct the free end of the guide tube toward a drain to be cleaned;
> a manually operable cable feed device connected to the free end of the guide tube for selectively axially displacing a drain cleaning cable relative to the drum assembly in response to rotation of the drum assembly; and,
> whereby the operator can hold the feed device in one hand, flex the guide tube as necessary toward the drain to be cleaned, and advance and retract the cable relative to the drum assembly without having to physically contact the cable.

('136 Patent col. 12, ll. 7-24).

Claim 35 of the '136 Patent claims,

> A guide tube assembly for a cable drain cleaning apparatus, comprising:
> a flexible guide tube having a connector at one end for coupling the guide tube to the drain cleaning apparatus and having another, free end;
> a manually operable cable feed device coupled to the free end of the flexible guide tube, said feed device capable of selectively feeding the cable through the guide tube in response to rotation of the cable within the guide tube.

('136 Patent col. 12, ll. 39-48).

The majority of the phrases in the asserted claims have already been construed by this Court in the context of the '588 and '905 Patents. *See* May 3, 2002 Opinion. However, construction of the terms "drain cleaning apparatus" and "flexible" are currently at issue.

**(1) "drain cleaning apparatus"**

Plaintiffs seek construction of the term "drain cleaning apparatus" as used in Claims

7

AO 72A
(Rev.8/82)

30 and 35 of the '136 Patent. According to plaintiffs, the term "refers generally to the combination or set of components that make up a cable drain cleaning machine." Plaintiffs argue that the term should not be construed to refer merely to a specific component of the machine, e.g., the frame or drum.

Defendant does not address plaintiffs' proposed construction of this term.

This Court finds that the plain and ordinary meaning of the term "drain cleaning apparatus" refers to the combination or set of components that make up the claimed drain cleaning machine. The title of the invention embodied in the '136 Patent is "Drain Cleaning Apparatus," indicating that the entire set of claimed components is included in that term. In addition, the specification and figures of the '136 Patent use the term to refer to the machine as a whole, not to individual components of the machine.

The parties have pointed to nothing in the prosecution history which reflects on the construction of this phrase, and the use of extrinsic evidence would be improper. Thus, this Court will construe the term according to its plain meaning as set forth above.

**(2) "flexible"**

Defendant argues that the term "flexible" should be construed to mean "anything that bends without breaking, whether or not it returns to its original form."

Plaintiffs argue that this expansive definition is illogical in the context of Claims 30 and 35 of the '136 Patent. Instead, plaintiffs argue that the term should be given its ordinary and customary meaning in light of the functionality of the guide tube as claimed, i.e., "pliable or easily bent."

This Court finds that the plain and ordinary meaning of the term "flexible" is pliable

8

and capable of being easily bent. As plaintiffs point out, under defendant's proposed construction, the stiff metal frame of the claimed drain cleaning apparatus would be considered flexible because at one point the metal tube it is comprised of was capable of being bent into its final shape without breaking. This construction of the term is unsupported by both logic and the relevant intrinsic evidence. The claim language indicates that the guide tube must be pliable and capable of being easily bent, unbent and re-bent "such that an operator can direct the free end of the guide tube toward a drain to be cleaned" and "whereby the operator can hold the feed device in one hand [and] flex the guide tube as necessary toward the drain to be cleaned." A guide tube that is flexible only in the sense that it can be bent without breaking, "whether or not it returns to its original form," could not perform as claimed.

The specification supports this construction. The parties have pointed to nothing in the prosecution history which reflects on the construction of this phrase, and the use of extrinsic evidence would be improper. Thus, this Court will construe the term according to its plain meaning as set forth above.

### b. Comparison to Modified Model 502 Cable Machine

Plaintiffs argue that the Modified Model 502 Cable Machine literally infringes Claims 30 and 35 of the '136 Patent based on the evidence submitted in connection with the other three patents and their proposed claim construction.

Defendant does not specifically address plaintiffs' infringement arguments, other than to respectfully disagree with this Court's prior claim construction. Defendant also incorporates by reference the arguments contained in its motions and responses relating to

AO 72A
(Rev.8/82)

infringement of the '588 and '905 Patents.

"Literal infringement requires that every limitation of the patent claim be found in the accused device." *Intermatic*, 273 F.3d at 1363. Thus, if even a single claim limitation cannot be found in the accused device, the asserted claim is not literally infringed. *See Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991).

The same evidence which supports a finding of infringement by the Modified Model 502 Cable Machine of the '905 and '588 Patents–examined at length and set forth in this Court's May 3, 2002 Memorandum of Opinion and Order–supports a finding of infringement of the '136 Patent. This Court finds that the testimony of Dr. Malguarnera, defendant's technical expert, and Mr. Rutkowski, inventor of all four patents, establishes that plaintiffs are entitled to summary judgment of infringement of Claims 30 and 35 of the '136 Patent by the Modified Model 502 Cable Machine.

### 2. Validity

Defendant argues that plaintiffs' Motion must be denied because Claims 30 and 35 of the '136 Patent are invalid as anticipated and obvious in light of the prior art.

Defendant is apparently attempting to reassert an argument already rejected by this Court that an invalid patent cannot be infringed. As noted in this Court's May 3, 2002 Memorandum of Opinion and Order, this argument is entirely without merit. *See Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity.").

Plaintiffs have moved for claim construction of Claims 30 and 35 of the '136 Patent

10

and for summary judgment as to the issue of infringement of those claims only. Defendant did not file a dispositive motion regarding the '136 Patent and the issue of its validity is not properly before this Court at this time. Whether the asserted claims are invalid as anticipated or obvious is simply irrelevant to the issue of their infringement.

## CONCLUSION

For these reasons, Plaintiffs' Motion for Claim Construction and for Partial Summary Judgment of Infringement of Claims 73 and 78 of the 'XXX Patent is granted. Spartan's Motion to Dismiss the Third Amended Complaint for Lack of Subject Matter Jurisdiction is denied as moot.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge